[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANTS MOTION FOR MODIFICATION
This nine year childless marriage, the second for each party, was dissolved on July 11, 1990. A separation agreement also dated July 11, 1990 was incorporated by reference in the judgment of dissolution. The defendant husband agreed, inter alia, in paragraph 3.1 and 3.2 to pay the plaintiff wife as alimony the sum of $400.00 per week until the death of the husband or the death or remarriage of the wife.
The following subparagraph of said agreement, 3.3 states that "the alimony provision made herein is based upon the contemplation of the parties that the wife shall continue to be employed by the law offices of Gary I. Cohen with her compensation to be $900.00 per week plus medical coverage as an incident of her employment as long as permitted." Paragraph 3.4 of the agreement states that "upon receipt of the $300,000.00 by the wife from the husband as hereinafter provided in Article V, or her cessation of employment with the law offices of Gary I. Cohen, except for the events provided for in paragraph 3.2 of this Agreement, the husband and wife agree that this shall be contemplated to be a substantial change in circumstances and a "second look" may be made by the Superior Court at Bridgeport upon petition by either party. The court shall examine the totality of the parties financial circumstances to determine the amount, if any, of alimony to be paid by the husband to the wife."
The defendant husband, age 49, is a Connecticut attorney who specializes in matrimonial law. He is presently remarried and has paid his former wife $185,000.00 of the $300,000.00 which he was required to pay her within five years and the wife has ceased her employment with her ex-husband's law offices. The defendant husband has moved for modification of alimony alleging "there has been a substantial change in circumstances." The plaintiff wife has moved "for additional alimony since it was contemplated in the dissolution that she would continue to be employed at the law offices of Cohen Rubin."
The husband is presently remarried and claims to spend CT Page 9082 approximately $20,000.00 yearly to support his son by a prior marriage who is now a senior at the University of Virginia. He further noted that he was bringing his 52 year old brother, who recently suffered a third stroke, up from Florida. He testified that at the time of the dissolution "it made sense to have his ex-wife in the office on the payroll where she would be entitled to health benefits and insurance." He felt the parties mutually contemplated in the "second look provision" that her employment would terminate on December 31, 1991 and he would keep her on the payroll and employed "until she got back on her feet." He further related that she returned from Florida in 1991 and purchased a third condominium, reentered college at the Stamford branch of the University of Connecticut, graduated at the top of her class with a 3.85 GPA and has been accepted for the fall session at the University of Miami Law School. He felt that he had done more for his former wife than he was obligated to under the dissolution agreement. He cited his payment of her Florida Scuba Diving and Polo Club memberships, Christmas Club payments, her transporation to and from Florida and the $4,000.00 to $5,000.00 in expensive clothing she had charged to his account. He related that he has already paid her $185,000.00 of the $300,000.00 called for in the separation agreement when the Easton property was sold and also gave her all of the furnishings therein. He further related that both the Easton and California properties will bring less than the parties had anticipated at the time of the original separation agreement. He portrayed his former wife as an accomplished legal secretary with computer skills who had been employed by several leading area law firms including Tyler-Cooper, Berchem Moses and Arnold Rutkin. The defendant recounted his 12 hour work days which result in approximately 200 monthly billable hours at an hourly rate of $275.00. He has eleven employees and his monthly office overhead is over $100,000.00. He feels that "he can't afford to get sick."
The husband reported that his assets have diminished since the dissolution to less than $100,000.00 excluding his law practice, that he still owes his former wife $115,000.00 that the Easton house sold for $25,000.00 less than anticipated, that a 1988-1989 tax audit cost him an unexpected $40,000.00 and that a 1990-1991 tax audit is currently in progress. He further related that the California property which was valued at $450,000.00 at the time of dissolution is currently valued at between $325,000.00 and $350,000.00. He is currently remarried and living in his present wife's Greenwich home with her three CT Page 9083 children, ages 7, 12 and 13. He claims to give her $4,000.00 monthly to help out with living expenses.
The defendant husband feels that his ex-wife's attendance at law school is "beyond the contemplation of the parties" at the time of dissolution and that it is not fair that he work over two thousand hours yearly to pay for her law school when she has the ability to be presently gainfully employed.
The plaintiff wife is now 51 years of age and relates that she had a one half million dollar settlement from her first marriage at the time of this second marriage which took place on the same day as her prior divorce. A home in Woodbridge was purchased and sold. She then put $300,000.00 into a horse farm in Easton and also purchased two Florida condominiums. She claims to have had only approximately $15,000.00 in cash left at the time of this dissolution when she deeded the Easton property to the husband. She relates that her present health is poor in that her left leg is partially paralyzed, she has ulcers, and residual heart, liver and kidney damage from her "three periods of illness" since the dissolution. She also claims psychiatric treatment and hospitalization during the post dissolution period. However, she did amass seventy college credits between January of 1991 and May of 1992 to receive her college degree from the University of Connecticut with a 3.875 GPA. She has been accepted at the University of Miami School of Law and plans to attend in September. She claims to have had no full or part time work on a regular basis since the age of 20, that she is presently uninsurable for health insurance, that she will be receiving approximately $80,000.00 from her deceased mother' s estate but owes the estate $97,000.00 which is secured by a mortgage on one of her Florida condominiums.
The wife claims that she did in fact discuss her attendance at law school with her then husband in 1989 and that the University of Miami represents her best opportunity for a possible transfer to the University of Connecticut School of Law. She states that her Shearson Account is paying her only 3 1/2 percent interest. The wife alleges that she was told by the defendant in December of 1991 that she would be terminated on December 31, 1991 and that she cannot sit in a chair long enough to perform full time secretarial work.
The wife claims that she brought $500,000.00 to this marriage. The husband claims that he brought a New Hampshire CT Page 9084 condominium, a Seymour office building, his law practice, and all of his earned income from said law practice from 1981 to 1990 and that he now has substantial tax liabilities from the plaintiff's Tree House Farm horse business.
The plaintiff wife's most recent financial affidavit of June 20, 1992 reflects a gross weekly income of $426.00 with a net weekly income of $253.00. She calculates these amounts based on the husband's recent payments of $1600.00 monthly and a claimed condominium rental loss of $59.20. She lists weekly expenses of $1974.00 which include $564.00 for law school tuition, books and living expense while at school. She also lists all expenses connected with her two apparently unrented condominium units. She lists assets of $182,972.00 and liabilities of $15,865.00, more than $11,000.00 of which are for attorney fees, federal and state taxes and a surgery bill. No meaningful comparison can be made with her June 21, 1990 financial affidavit which reflected a gross income of $900.00 from her employment with the defendant and $390,000.00 of real estate assets in that she no longer has two parcels which she listed at $365,000.00 in gross equity and further she has reduced the market value of the two listed condominiums from an equity of plus $25,000.00 in 1990 to a present value of minus $8,500.00.
The defendant husband's June 20, 1992 financial affidavit reflects $24,000.00 in gross monthly income from his employment with a net monthly income of $16,163.00. He, too, complicates the matter by using monthly figures rather than weekly and by subtracting $2,421.00 for expenses attributable to the California property with a notation that the defendant will be getting all of the equity in same but characterizes a $40,000.00 loan as being disputed. He lists monthly expenses of $15,677.00 which include $3,477.00 to the plaintiff for alimony, auto loan, medical and auto insurance, $4,000.00 which he claims to pay his present wife primarily in cash for the use of her home, $1,600.00 for his son's college and living expenses, $1,500.00 for charity, $2,000.00 for credit debt, $1,000.00 for clothing and $1,000.00 for entertainment. He shows liabilities of $168,000.00 and assets of $348,000.00. The defendant's July 11, 1990 financial affidavit showed $3,080.00 in weekly income and $3,910.00 in weekly expenses. He listed $504,000.00 in assets and $65,500.00 in liabilities.
It is not the function of this court to retry the CT Page 9085 dissolution proceeding. However, it is often helpful and in this case necessary for the court to be acquainted with the past background of the matter in order to determine if in fact the existing orders should be modified. Defendant's motion for modification is filed pursuant to the provisions of 46b-86(a) of the Connecticut General Statutes. For there to be a modification, the burden rests with the moving party to show a substantial change in the circumstances of either party.
The present orders were entered at the time of dissolution on July 11, 1990 and were predicated upon "the wife continuing to be employed by the law offices of Gary I. Cohen with her compensation to be $900.00 per week plus medical coverage as an incident of her employment as long as permitted," all as set forth in Paragraph 3.3 of the Separation Agreement dated July 11, 1990. The wife is presently not so employed. She voluntarily decided to return to college which she has so admirably completed and further intends to pursue a law degree at the University of Miami. Her health has allowed her to complete her college education and presumably will allow her to continue with her law school education. This scenario is a sufficient ground for the court to find a substantial change in circumstances. The conclusion is fortified by paragraph 3.4 of the July 11, 1990 Separation Agreement between the parties which states in pertinent part that "upon her cessation of employment with the law offices of Gary I. Cohen, . . . the Husband and Wife agree that this shall be contemplated to be a substantial change in circumstances and a "second look" may be made by the Superior Court at Bridgeport upon petition by either party. The court shall examine the totality of the parties' financial circumstances to determine the amount, if any, of alimony to be paid by the Husband to the Wife."
The court has considered all of the testimony presented, the past and current financial affidavits as on file, all of the factors of 46b-82 of the Connecticut General Statutes and the case law which speak to same in its determination of this matter. Connecticut General Statutes 46b-86(a) requires the proponent of the motion to show a substantial change in the circumstances of either party. The moving party must show that continued operation of the original order would be unfair or improper. The defendant has sustained his burden and the motion for modification is granted. The following orders shall enter and are retroactive to January 1, 1992 by agreement of the parties. CT Page 9086
1. The defendant husband, during his lifetime, shall pay to the plaintiff wife as alimony the sum of $650.00 per week in accordance with the terms of paragraph 3.2 of the July 11, 1990 Agreement. The weekly alimony shall be reduced from $650.00 to $550.00 when the husband pays the wife the remaining $115,000.00 required by Section 5.5 of their July 11, 1990 Agreement.
2. The defendant husband shall maintain and pay for the plaintiff wife's medical insurance on his office group policy for so long as he may legally do so. Thereafter the wife shall be responsible for procuring and paying for her own medical insurance.
3. The defendant husband shall be responsible for and shall continue to pay the existing loan on the wife's BMW automobile. He shall execute and provide her with any necessary documents so that she may register the car in Florida. The plaintiff wife shall be responsible to carry all insurances in connection with said automobile.
BALLEN, JUDGE